UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRADLEY L. BRIDGES,

　　　　　Plaintiff,

　　v.

COMMISSIONER OF SOCIAL
SECURITY,

　　　　　Defendant.

No.  2:24-cv-03487-CKD

<u>ORDER</u>

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to magistrate judge jurisdiction.  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and remand for further proceedings and deny the Commissioner's cross-motion for summary judgment.

<u>BACKGROUND</u>

　　　　Plaintiff, born in 1969, applied for DIB and SSI on December 20, 2021, alleging disability beginning November 14, 2020.  Administrative Transcript ("AT") 27, 158.  Plaintiff alleged he was unable to work due to problems with his neck, hip, and shoulder, PTSD, depression,

1

migraines, and degenerative disc disease. AT 161. On January 8, 2024, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled between the alleged onset date in 2020 and the date of the decision. AT 27-41. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since November 14, 2020, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine; right shoulder impingement; loss of vision in the left eye; scoliosis; and mild degeneration of the thoracic spine.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work with the following limitations: He can frequently stoop and climb ramps, stairs, ladders, ropes, and scaffolds. He can frequently crawl and can occasionally reach overhead with the right dominant upper extremity. He must avoid heights and dangerous machinery and work environments that require good bilateral vision for safety.
>
> 6. The claimant is capable of performing past relevant work as a Nurse Assistant (DOT 355.674-014). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2020 through the date of this decision.

AT 30-41.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred by not finding severe mental impairment or factoring mental impairment into the RFC; (2) the ALJ erred in discrediting plaintiff's subjective statements about his mental symptoms; (3) the ALJ erred by not developing the record with lay testimony by plaintiff's friend; (4) the ALJ erred in determining the physical residual functional capacity

2

(RFC).

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Mental Impairment

1. Step Two Non-Severity

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by finding his mental impairments non-severe. Plaintiff argues that this was harmful error because his severe mental impairments were not considered in the RFC determination, and the vocational expert

3

(VE) was never asked how they would affect his ability to work.  Thus, plaintiff contends, the step two finding of non-severe mental impairment was consequential to the ultimate finding that he was not disabled.  See Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if "inconsequential to the ultimate nondisability determination").

Step two of the Commissioner's five-step evaluation process inquires whether the claimant had severe impairments during the period for which he seeks disability benefits.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is severe if it "significantly limits" an individual's "ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "[A]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Glanden v. Kijakazi, 86 F.4th 838, 844 (9th Cir. 2023) (citing Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)); see also 20 C.F.R. §§ 404.1520(c), 416.920(c).  "In analyzing a mental impairment ..., the Secretary must consider the evidence in the case record—the mental status examination and psychiatric history."  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

The step two severity analysis is a "de minimis requirement that screens out only frivolous claims."  Glanden, 86 .F.4th at 843 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).  The purpose is to identify at an early stage those claimants whose medical impairments are so slight that it is unlikely they are disabled even if their age, education, and experience is considered.  Bowen, 482 U.S. at 153.  The court analyzes step two by asking whether the ALJ had substantial evidence to find that the medical evidence "clearly established" that plaintiff did not have a severe mental impairment or combination of impairments.  Webb, 433 F.3d at 687; see also Glanden, 86 F.4th at 844.

At step two, the ALJ found that plaintiff's medically determinable impairment of PTSD did not cause more than minimal limitation and was non-severe.  AT 31.  The ALJ noted that, as there was "substantial overlap in symptomology between different mental impairments, . . . the claimant's psychological symptoms and their effect on his functioning have been considered together, instead of separately, regardless of the diagnostic label attached."  AT 31.  The ALJ explained his finding of non-severe mental limitation by noting that "the majority of [plaintiff's]

4

mental status findings were within normal limits," though he had "mildly abnormal" examination findings on "a few occasions[.]"  AT 32.

When a claimant has presented a "colorable claim" of mental impairment, the ALJ is required "to follow a special psychiatric review technique."  Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725-26 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a).  In it, the ALJ rates the degree of functional limitation for four functional areas and determines whether the impairment is severe.  Keyser, 648 F.3d at 725; 20 C.F.R. § 404.1520a.  The four areas are known as the "paragraph B" criteria: understanding and applying information; interacting with others; concentrating, persisting, and maintain pace; and adapting or managing oneself.  20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04(B), 12.06(B), 12.15(B).  Agency policy explains that "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment[.] . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment[.]"  Social Security Ruling (SSR) 96-8p.

Using the psychiatric review technique, the ALJ found plaintiff to have mild limitations in all four areas.  AT 32-33.  In making these determinations, the ALJ cited plaintiff's "largely normal" mental status examination findings; his ability to perform daily activities (e.g., "go places without reminders, prepare meals, pay bills, and take public transportation . . . handle self-care and personal hygiene, care for pets, care for others"); and medical evidence that plaintiff was "consistently noted as pleasant, cooperative, and friendly, with good eye contact."  AT 32-33.  The ALJ also credited the opinions of two state agency consultants, who found that plaintiff had mild limitations in each of the four areas.  AT 33.

Plaintiff argues that the above analysis improperly disregards evidence that his mental impairments significantly limited his ability to work.  Plaintiff first cites the August 2015 opinion of Dr. Deborah Lacy, who found plaintiff moderately impaired in five work-related mental functions.  AT 501.  The ALJ considered Dr. Lacy's opinion but discounted it as "so remote in time" as to be irrelevant to the period at issue, beginning with the alleged onset date in November 2020.  AT 33.

Plaintiff next cites the April 2022 opinion of Dr. Morgen Aita, who found plaintiff to have

mild limitation in interacting with others and moderate limitation in coping with normal stressors in a work environment, including completing a normal workday or workweek and responding appropriately to changes in a work setting. AT 1150. The ALJ found Dr. Aita's opinion "largely persuasive" and supported by "thorough examination findings." AT 33. The ALJ disagreed with "the conclusion that the claimant has moderate limitations in interacting with others," finding only mild limitation in that area. AT 33-34. However, like the ALJ, Dr. Aita found plaintiff to have mild limitations in interacting with others. Because the ALJ apparently conflated Dr. Aita's findings in two different areas, the ALJ did not address Dr. Aita's finding of moderate limitation in coping with the stressors of a work environment. Put another way, the ALJ cited no evidence to discount Dr. Aita's finding of moderate mental impairment in completing a normal workday/workweek and handling changes in a work setting.

At the September 12, 2023 hearing, the ALJ ordered another psychiatric evaluation due to plaintiff's "prior issues with mental health" and recent changes to medication. AT 76. Accordingly, a third consultative examiner, Dr. Charles Odipo, examined plaintiff in October 2023. Dr. Odipo noted that plaintiff was currently homeless and had moderate mental symptoms (including fearfulness, heightened anxiety, hyper-vigilance, irritability, anger outbursts) that "occur on a daily basis" and had become "worse and more persistent" since they started. AT 1422-23. Dr. Odipo noted that plaintiff had been diagnosed with PTSD and major depressive disorder and was anxious throughout the interview. AT 1422-23. Dr. Odipo further noted:

> He has difficulty being around people, He said, 'I don't trust people, I always get burned. I fear people and have to watch my environment because of everything that has happened to me. 1 used to have three jobs to having nothing after I was hit by a semi-truck. Talking about it brings sadness and emotions' (he started tearing).

AT 1422.

As to mental limitations, Dr. Odipo concluded in part:

> Has difficulty performing complex tasks adequately without accommodations due to stress, anxiety and depressive symptoms and social difficulties. He is deemed markedly restricted. . . .
>
> Has difficulty accepting instructions from supervisors and interacting with coworkers and the public without accommodations due to stress, anxiety and social difficulties. He is deemed to be

6

moderately impaired.

Has difficulty maintaining regular attendance in the workplace without accommodations due to anxiety and pain symptoms. He is deemed to be markedly restricted.

Has difficulty handling normal work-related stress from a competitive work environment without accommodations. His stress, anxiety, depression and pain problems and difficulty being around people will impact claimant's ability to handle work related stress. He is deemed markedly restricted.

AT 1424.  The ALJ found Dr. Odipo's opinion unpersuasive, reasoning that it was "not well supported by [his] examination findings, which showed abnormal mood and affect, but otherwise normal or mild findings."  AT 34.  The ALJ also found the opinion "inconsistent with the longitudinal evidence, which also showed relatively mild findings."  AT 34.

Plaintiff argues that, in addition to discounting moderate and marked mental limitations opined by the examining physicians, the ALJ disregarded record evidence of plaintiff's poor mental functioning during the period at issue.  In December 2021, plaintiff was assessed with "delusions" and "symptoms concerning for schizophrenia" when he told a medical provider that his cell phone had been hacked, his disability checks had been stolen, and his siblings were working with the police to torment and hurt him.  AT 721-723.  A month earlier, in November 2021, plaintiff was homeless and brought to the emergency room by ambulance "due to depression."  AT 544.  Medical notes state that he presented "with paranoid delusions stating that people are following him and stealing his personal belongings. Patient further states that people are controlling his phone and watching him through this platform."  AT 544.  However, he stated he was not interested in psychiatric medications or therapy.  AT 544.

In sum, both consultative examiners who interviewed plaintiff during the relevant period found moderate or marked mental limitations, and plaintiff's self-reports during that period suggest that, at least at times, he experienced paranoia, delusions, and anxiety, though he may have been unwilling to seek treatment.  After reviewing the record, the court finds that the ALJ's conclusion that plaintiff's mental impairments caused no more than minimal limitation was not

7

supported by substantial evidence.  Rather, the evidence establishes that the combination of plaintiff's mental impairments satisfies step two's de minimis standard.  Smolen, 80 F.3d at 1290 ("At the step two inquiry, the ALJ must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.")

However, this step two error was, in itself, harmless.  Because the ALJ determined at step two that plaintiff suffered severe physical impairments, the sequential evaluation process continued to the next steps.  In subsequent steps, regardless of the step two findings, "the ALJ was required to consider all impairments—severe and non-severe—in his RFC analysis." Michelle L.A. v. O'Malley, 2024 WL 4361615, *6 (S.D. Cal. Sept. 30, 2024) (citing Loader v. Berryhill, 722 F. App'x 653, 655 (9th Cir. 2018); Buck v. Berryhill, 869 F.3d 1040, 1048–49 (9th Cir. 2017)).  As the Ninth Circuit explained,

> step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.

Buck, 869 F.3d at 1049 (cleaned up).  Thus, the court turns to whether the ALJ considered the limitations imposed by plaintiff's mental impairments when determining the RFC.

2.  Harmful Error

As noted above, the RFC contains no mental limitations.  Though the ALJ assessed mild mental limitations at step two, he did not mention these limitations or any evidence concerning mental issues after step two of the evaluation.  See AT 36-39 (discussing physical impairments in RFC determination).  Nor did the ALJ pose a hypothetical question to the VE about a person with plaintiff's physical RFC and any kind of mental limitation.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985).  RFC is assessed based on the relevant evidence in the case record,

including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4). As to mental impairment, as noted above, "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment[.] . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment[.]" Social Security Ruling (SSR) 96-8p.

In this case, the ALJ considered only evidence of physical limitation when assessing the RFC. Though acknowledging that steps 4 and 5 "require[] a more detailed assessment" of a claimant's mental impairment (AT 34), the ALJ never returned to the evidence of mental impairment after step two, nor did he explain how his finding of mild mental limitations factored into the RFC. See Hutton v. Astrue, 491 Fed. App'x 850, 851 (9th Cir. 2012) (ALJ erred in RFC analysis by failing to consider his own finding that claimant's non-severe PTSD caused mild limitations in concentration, persistence, or pace); Tammy W. v. Comm'r, 787 F.Supp.3d 1175, 1183 (W.D. Wash. June 20, 2025) (noting that "an ALJ is not required to impose any restriction in the RFC based on a 'mild' mental limitation but does need to at least consider the issue" in the RFC analysis). As to mental limitations, "the question is not whether the ALJ's paragraph B findings are consistent with the RFC, but whether the ALJ has provided an adequate explanation for the mental limitations contained in the RFC." Id.

The ALJ's decision included a boilerplate statement that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" per the applicable regulations. AT 36. However, several district courts have found that an ALJ's boilerplate statement that he considered "all symptoms" does not satisfy the requirement that he provide a detailed RFC assessment. See Michelle L.A., 2024 WL 4361615, *7 (collecting cases). Here as in Michelle L.A., "[t]he ALJ is not required to include every impairment in the RFC, but he is required to consider each impairment, and in this regard, the ALJ erred." 2024 WL 4361615, at *6.

Moreover, this error was not harmless. Based on VE testimony (where the VE did not consider any mental limitations), the ALJ found that plaintiff could perform past relevant work as a nurse assistant (DOT 355.674-014). AT 40, 74-75. The VE testified that if an individual with plaintiff's RFC missed work two or more times a month, there would be no work available. AT 76. The ALJ did not make alternate findings if plaintiff could not perform his past job as a nurse assistant. The court finds that the ALJ's failure to consider mental impairment in the RFC was consequential to the ultimate finding of nondisability, constituting harmful error. Plaintiff is entitled to summary judgment on this claim.[1]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact,

---

[1] The court does not reach the remaining claims.

10

disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED;

3. Judgment is entered for plaintiff; and

4. This matter is remanded for further administrative proceedings consistent with this order.

Dated:  January 27, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/brid3487.bothdibssi.ckd

11